IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ALFRED L. VICKERS,                      )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )        CASE NO. 2:04-cv-880-F
                                        )               (WO)
SYLVEST FARMS, INC.,                    )
                                        )
        Defendant.                      )

## MEMORANDUM OPINION AND ORDER

### I.  INTRODUCTION

Plaintiff Alfred L. Vickers ("Vickers") brings this action against his former employer,

Sylvest Farms, Inc., ("Sylvest") alleging claims of improper termination and retaliation based

upon racial discrimination pursuant to Title VII, 42 U.S.C. § 2000e, *et seq*.  This cause is

before the Court on the Defendant's Motion for Summary Judgment (Doc. #8).  The Court

has reviewed the submissions of the parties and finds that, for the reasons set forth below,

the motion is due to be GRANTED.

### II.  JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C.

§ 1331 (federal question), 28 U.S.C. § 1343 (civil rights), and 42 U.S.C. §§ 2000e to 2000e-

17 (Title VII of the Civil Rights Act of 1964 as amended).  The parties do not contest

personal jurisdiction or venue, and the Court finds adequate allegations in support of both.

### III.  STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is

appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  After the

nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).

The evidence "adduced at the summary judgment phase must be based on personal knowledge, must set forth specific facts as would be admissible in evidence, and must demonstrate the competence of the party to offer the evidence." *Davis v. Qualico Misc., Inc.*, 161 F. Supp. 2d 1314, 1321 (M.D. Ala. 2001).  The "summary judgment rule in job discrimination cases applies just as in other cases.  No thumb is to be placed on either side of the scale." *Chapman v. AI Transport*, 229 F.3d 1012, 1026 (11th Cir. 2000).

## IV. FACTS

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion.  The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following facts.

Vickers, an African-American, was hired by Sylvest as a live-haul truck driver in May 2002.   In that capacity, Vickers worked the night shift and transported live chickens from outlying farms to the Sylvest processing plant.  On August 28, 2003, the Plaintiff was involved in a two-vehicle accident in the course of performing his duties for Sylvest.  Sonya Compton, the driver of the other vehicle, was killed as a result of the collision, and her estate later filed suit against both Vickers and Sylvest.

After the accident, Vickers apparently remained in his position with Sylvest until

February of 2004.  It was at that time that Compton's estate deposed Vickers concerning the August 2003 accident.  Through Vickers' testimony at the deposition, Sylvest representatives became aware of approximately fifteen traffic citations that he had received over the past twenty years, the majority of which predated the five-year driving record Sylvest required prior to hiring him in 2002.  Vickers' testimony also revealed that he had been previously employed by the Gambino crime family and that he had received a speeding ticket less than five months after the accident while continuing his work for Sylvest.

During a break in the deposition, the Plaintiff alleges that one of his superiors at Sylvest, Wayne Sasser ("Sasser"), confronted him about the content of his testimony and told Vickers he had "messed up" by revealing "damaging information" pertaining to Vickers' involvement with the Gambino crime family.  Shortly after returning to work, Vickers was informed by Sasser that he was being suspended for a week while Sylvest looked into the revelations concerning his driving record.  Sasser contacted Vickers later in the week and asked him to come to the company's office for a meeting.  There, Sasser informed Vickers that he was being terminated due to his driving record and, upon Vicker's request, produced a memorandum putting forth the explanation for his termination in writing.

### V.  PROCEDURAL HISTORY

After Sylvest terminated him in March of 2004, Vickers filed a charge of race discrimination and retaliation with the Equal Employment Opportunity Commission in Birmingham, Alabama.  The Commission dismissed the charge and issued Vickers a Notice

of Right to Sue on June 21, 2004.  Vickers subsequently commenced this suit on September 20, 2004.

## VI. DISCUSSION

Title VII prohibits an employer from discriminating against its employees on the basis of race.  42 U.S.C.A. § 2000e-2(a)(1).[1]   In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court established the allocation of the burden of production and an order for the presentation of proof in employment discrimination and retaliation cases.  *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).   Under the *McDonnell Douglas* approach, a plaintiff has the initial burden of establishing a *prima facie* case of unlawful race discrimination or retaliation by a preponderance of the evidence.  411 U.S. at 802.  A *prima facie* case requires evidence adequate to create an inference that an adverse employment decision was based on an illegal discriminatory or retaliatory criterion.  *Int'l Broth. of Teamsters v. United States*, 431 U.S. 324 (1977).

### A. Discriminatory Discharge Claim

To establish a *prima facie* claim of race discrimination under Title VII based on circumstantial evidence, Vickers "must show that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4)

---

[1]  Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

he was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class." *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003).

 Here, there is no question that Vickers is a member of a protected class or that he has suffered an adverse employment action. Also, by holding his position for a significant period of time, the Plaintiff's qualification for his position can be inferred.[2] *Crapp v. City of Miami Beach*, 242 F.3d 1017, 1020 (11th Cir. 2001). Therefore, the only issue in dispute is the question of whether the Plaintiff can demonstrate that he was treated differently than another non-protected similarly situated employee.

"In determining whether employees are similarly situated for purposes of establishing the *prima facie* case of discriminatory dismissal, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) (citation omitted). The most important factors in this evaluation are "the nature of the offenses committed and the nature of the punishments imposed." *Id*. The Eleventh Circuit requires the plaintiff to show that the quantity and quality of the relevant comparator's conduct be "nearly identical" "in all relevant respects." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004); *See also Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001);

---

[2]The Defendant's brief does raise the question of whether Vickers could have become unqualified for his position after the company discovered the additional information concerning his driving record. Because the Court finds the Plaintiff has failed on the question of a similarly situated employee, it is unnecessary to reach this question.

*Maniccia*, 171 F.3d at 1368.   This standard prevents "courts from second-guessing employers' reasonable decisions by comparing apples to oranges." *Maniccia*, 171 F.3d at 1368.  If the plaintiff does not produce sufficient evidence to establish the employees that he hopes to use as comparators are "similarly situated in all aspects, or that their conduct was of comparable seriousness to the conduct for which he was discharged[,]" he  fails to prove the fourth element of the *prima facie* case, and summary judgment is appropriate. *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997).

Here, the sole basis for Vickers' discrimination claim is that a white driver, Winston Johnson ("Johnson"), was retained by the company after he was involved in a fatal traffic accident in 1995.  According to Vickers, Johnson told him that he  "ran a stop sign and killed a guy."  Vickers goes on to state that Johnson was similarly deposed in connection a civil suit stemming from this incident, and yet remains on the job to this day.  It is the Plaintiff's contention that discriminatory intent is revealed by the Defendant's dismissal of Vickers and retention of Johnson despite similar accidents.  However, the Plaintiff does not elaborate on any further details regarding the Johnson accident or profess to have any personal knowledge concerning the 1995 events.

While the Plaintiff and Johnson may have held similar posts with the Defendant, they are not similarly situated for the purposes of a Title VII claim.  First, the Plaintiff has provided no evidence of the surrounding circumstances of Johnson's 1995 accident.  The only facts regarding these events the Plaintiff has garnered are that Johnson was involved in

a fatal accident and that his deposition was taken shortly thereafter.  These details are far too vague to support a finding that Johnson and Vickers engaged in anything approaching "nearly identical" conduct.  The Court has no way of knowing whether Sylvest discovered comparable information concerning Johnson's driving record subsequent to his accident or whether Johnson received a traffic citation in the time after his accident.  Also, this argument ignores the Defendant's initial retention of the Plaintiff for eight months after the accident up until his deposition.  Without more information, it is not possible for the Court to make a proper comparison between the quantity and quality of the acts of the two drivers to determine whether they are "similarly situated in all relevant aspects."  Therefore, the Plaintiff has failed in his attempt to satisfy the initial burden, and summary judgment is appropriate.

Even assuming Vickers had made out a satisfactory *prima facie* case, the Defendant would still prevail.  Once a plaintiff establishes the elements of the *prima facie* case, thereby raising an inference of discrimination, the defendant must come forward with a legitimate, non-discriminatory reason for the challenged employment action.  *Holifield*, 115 F.3d at 1564.  The employer's burden is "exceedingly light" and requires only that the defendant produce evidence that could allow a rational fact-finder to conclude that the challenged employment action was not made for a discriminatory reason.  *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994).  Because the employee always bears the ultimate responsibility for persuading the trier of fact, this burden is one of production, not

persuasion. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

Where the defendant satisfies this burden, the plaintiff may then attempt to "demonstrate that the defendant's articulated reason is a mere pretext for discrimination." *Holifield*, 115 F.3d at 1565. This opportunity merges with the plaintiff's burden of demonstrating by a preponderance of the evidence that "the employer intentionally discriminated against him because of his race." *Cooper v. Southern Co.*, 390 F.3d 695, 723 (11th Cir. 2004). "To survive summary judgment, the plaintiff must [] come forward with evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Id*. at 726 (internal quotes and citations omitted). The Plaintiff may face this task by raising "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action." *Id*.

Here, the Plaintiff attempts to counter the idea that the Defendant terminated him for a legitimate reason by arguing that Sylvest did not seek out the information concerning his extended driving record when it hired him in 2002.[3] The Plaintiff also argues that the Defendant treated him differently than Johnson by going "back approximately 20 years searching his record." However, the Plaintiff does not dispute that the Defendant was unaware of many of the citations in his past. Nor has the Plaintiff demonstrated that Johnson

---

[3]The Defendant sought only convictions within the past three years and a driving record that went back five years.

was treated in a different manner or that the company typically deals with the aftermath of fatal traffic accidents in a way dissimilar from what took place here.  The absence of a discriminatory motive is further evidenced by the Defendant's retention of another African-American driver who was also involved in a fatal traffic accident.  The Plaintiff testified  in his deposition that another black driver, Chester Hardy, was involved in "the same type of accident" but remained with the company.

In conclusion, the Plaintiff has not provided a sufficient basis for charging the Defendant with any hint of a discriminatory motive.  The Plaintiff's attempted comparison to Johnson is far too vague and does not address the fact that the Defendant appeared to have ample reason to terminate the Plaintiff considering his involvement in a fatal accident, his receipt of a subsequent and unrelated speeding ticket, and the discovery that he had an extensive history of traffic citations and an association with an organized crime family.  In this instance, the Court sees no reason to "second-guess" the Defendant's hiring practices or to disbelieve that the Plaintiff was dismissed for a legitimate reason.

**B. Retaliation Claim**

A similar burden shifting analysis is employed when analyzing retaliation claims under Title VII.  An individual alleging retaliation must establish a *prima facie* case by demonstrating "(1) that he engaged in statutorily protected activity, (2) that he suffered an adverse employment action, and (3) that there is some causal relation between the two events."  *Olmsted v. Taco Bell Corp.,* 141 F.3d 1457, 1460 (11th Cir. 1998) (citations

omitted).   A plaintiff engages in statutorily protected activity where he "had a good faith, objectively reasonable belief that his activity is covered by the statute" in question.  *Standard v. A.B.E.L  Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1999).

The claim of retaliation is misplaced because the Plaintiff did not engage in a statutorily protected activity and has produced no evidence that would make it appear that it was objectively reasonable for him to believe so.  By the Plaintiff's own pleadings, he claims that the retaliatory action of the Defendant related to the Plaintiff's truthful testimony in a deposition related to a personal injury claim.  Indeed, the Plaintiff repeatedly stated in his deposition for this case that Sylvest "retaliated" against him because he admitted he worked for the Gambino crime family in the earlier deposition.  In no way does Title VII protect such an activity because no form of discrimination, racial or otherwise, is  alleged to be involved.  Therefore, summary judgment is also appropriate for the retaliation claim.

## VII. CONCLUSION

For the reasons stated above, it is hereby ORDERED that the defendant's Motion for Summary Judgment (Doc. # 8) is GRANTED.

It is further ORDERED that the pretrial conference set for October 20, 2005 is CANCELED.

The Clerk of the Court is hereby DIRECTED to remove the above-styled case from the December 5, 2005 trial docket.

A separate final judgment will be entered in accordance with this Memorandum Opinion and Order.

DONE this 11th day of October, 2005.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE